Central District & Printing Telegraph Company, Appellant, *v.* Pittsburg, McKeesport & Youghiogheny Railroad Company.

*Telegraph and telephone companies—corporations—Use of streets of borough—Vacation of streets.*

Where a telegraph and telephone company, having a charter from the commonwealth, and all the powers granted by statute to such companies, maintains, with municipal consent, duly granted, its poles and wires on certain streets of a borough, the rights of such company with respect to those streets are terminated by a subsequent ordinance of the borough providing for the vacation of the streets. In such a case the company has no standing after a street has been vacated, to restrain the owner of the bed of the street from removing the poles and wires.

Argued May 8, 1913. Appeal, No. 115, April T., 1913, by plaintiff, from decree of C. P. Allegheny Co., Third Term, 1911, No. 75, dismissing bill in equity in case of Central District & Printing Telegraph Company v. Pittsburg, McKeesport & Youghiogheny Railroad Company, and Pittsburg & Lake Erie Railroad Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Affirmed.

Bill in equity for an injunction to restrain defendants from removing plaintiff's poles and wires.   Before Evans, J.

From the pleadings and admission filed by the parties, it appeared that the plaintiff was incorporated under the laws of Pennsylvania as a telephone and telegraph company, and that it occupied with its poles and wires certain streets of the borough of Connellsville with consent of that borough.   The title to the bed of the streets in question was in the defendant railroads.   On February 11, 1911, the borough passed an ordinance vacating the streets which the plaintiff used for its poles and wires.

The court dismissed the bill.

*Error assigned* was decree dismissing the bill.

*Thos. Patterson*, of *Paterson, Sterrett and Acheson*, for appellant.—Under the charter and municipal ordinances the appellant acquired vested rights (an easement) and its franchise to use the streets is an irrevocable contract: Louisville Trust Co. v. Cincinnati, 76 Fed. Repr. 296; Levis v. Newton, 75 Fed. Repr. 884; Detroit Citizens' St. Ry. Co. v. Detroit, 64 Fed. Repr. 628; Africa v. Mayor, etc., of Knoxville, 70 Fed. Repr. 729; Mayor, etc., of Knoxville v. Africa, 77 Fed. Repr. 501; Hudson Tel. Co. v. Jersey City, 49 New Jersey Law, 303; Board of Mayor, etc., of Morristown v. Telephone Co., 115 Fed. Repr. 304; New Castle v. C. D. & Printing Tel. Co., 207 Pa. 371; McKeesport v. Ry. Co., 2 Pa. Superior Ct. 242.

Such contracts are binding though affecting the control of subsequent municipal authorities over the streets: Baltimore Trust & Guarantee Co. v. Baltimore, 64 Fed. Repr. 153; New Castle City v. C. D. & Printing Tel. Co., 207 Pa. 371; McKeesport v. Pass. Ry. Co., 2 Pa. Superior Ct. 242; P. W. & B. R. R. Co. v. Chester, 121 Pa. 44.

Highways in Pennsylvania are under the absolute

control of the state, and the legislature may make such grants with respect to them for public use as it sees fit: Philadelphia & Trenton R. R. Co.'s Case, 6 Whart. 25; Shinzel v. Bell Telephone Co., 31 Pa. Superior Ct. 221; Jones v. R. R. Co., 151 Pa. 30.

*Wm. A. Seifert,* with him *Reed, Smith, Shaw & Beal,* for appellee.—The right to vacate streets cannot be surrendered: Chicago, B. & Q. R. R. Co. v. Illinois, 200 U. S. 561; Wetherill v. R. R. Co., 195 Pa. 156; West Phila. Pass. Ry. Co. v. Philadelphia, 10 Phila. 70; Baltimore v. Baltimore Trust & Guarantee Co., 166 U. S. 673; Wabash R. R. Co. v. Defiance, 167 U. S. 88; Pittsburg v. Gas Co., 34 Pa. Superior Ct. 374; Ridge Ave. Pass. Ry. Co. v. Philadelphia, 181 Pa. 592.

The rights of the appellant in the streets terminated upon the vacation of said streets by the municipality and the fee in said streets reverted to the abutting owner discharged of the appellant's rights: Shinzel v. Bell Tel. Co., 31 Pa. Superior Ct. 221; Taylor v. Ry. Co., 91 Me. 193; Natick Gaslight Co. v. Natick, 175 Mass. 246; New England Telephone & Tel. Co. v. Boston Terminal Co., 182 Mass. 397.

OPINION BY HEAD, J., October 13, 1913:

The able briefs presented by counsel carry the discussion of the question involved much farther afield than we deem necessary for its solution. That question, as fairly stated by the appellant, is, "Where a telegraph and telephone company, having a charter from the commonwealth and all the powers granted by statute to such companies, maintains, with municipal consent, duly granted, its poles and wires on certain streets of the borough, are the rights of such company with respect to those streets terminated by a subsequent ordinance of the borough providing for their vacation?"

Without attempting to analyze, or if need be reconcile general statements of text writers, or utterances of

240   C. D. & P. T. CO., Appellant, *v.* P., McK. & Y. R. R. CO.

Opinion of the Court.       [55 Pa. Superior Ct.

courts in other jurisdictions, we can find in the decisions of our own courts ample and authoritative expositions of the principles that must here control. In Phillips v. R. R. Co., 78 Pa. 177; Jones v. R. R. Co., 151 Pa. 30; Shinzel v. Tel. Co., 31 Pa. Superior Ct. 221; Cent. Dist. & Printing Tel. Co. v. Clairton Borough, 51 Pa. Superior Ct. 649, and the many cases therein cited, will be found full discussions of these principles which need not here be repeated.

The plaintiff in the bill filed seeks to enjoin the defendants from the exercise of rights ordinarily incident to ownership of real property. Upon what clear legal warrant can it rest such a claim? The act of 1874, under which it is incorporated, thus defines the powers conferred on companies of this class: "Such corporations shall be authorized to construct lines of telegraph along and upon any of the public roads, streets or highways, or across any of the waters within the limits of this state," etc. Their legal location and habitation is thus declared to be "along and upon any of the public roads, streets or highways" of the commonwealth. The streets of a city or borough are of course a part of the system of the state's highways. But it has long been settled that the public easement in such streets is more extensive than it is in the ordinary country roads.

To the municipalities the state has committed the guardianship and control of this enlarged public easement. They may determine how it can best be exercised to promote the public good. Extensive then as are the powers of the municipality in dealing with the public easement in its streets, they cannot go further. A borough may neither give nor sell that which it has not, and neither expressly nor by implication can it impose any additional servitude upon the land in the hands of its owner. Immediately upon the extinguishment, by any legal method, of the public easement, the rights of the landowner in his property become com-

plete as if no servitude had ever been imposed on it. Hence in Phillips v. R. R. Co., 78 Pa. 77, it was said by Mr. Justice GORDON: "The land of the plaintiff was subservient only to the public right of way: of the right to the soil he was never divested, but only of the surface thereof, so far as was required for the public convenience. As soon as the common road was vacated, either by legal process or by abandonment, the right to such occupancy revested in the owner of the fee." In Jones v. R. R. Co., 151 Pa. 30, Mr. Justice WILLIAMS, after showing that the plaintiff in the case first cited was allowed to recover in ejectment to what had been the center of the public road, said: "He owned to the center of the road, subject to the public easement. The railroad company entered under the protection of that easement, but, once in possession, its use soon became inconsistent with and destructive of the easement so that the public was compelled to abandon it. The land was thus relieved from the burden imposed by the highway and the owner was at liberty to assert his title against anyone found in possession." Later on in the opinion we find the following: "The permission of the municipality to cross or enter upon one of its streets, whether upon the surface or above or below it, is an authority to the grantee to enter within the limits affected by the public easement and in subordination to it. The grantee may lawfully enter under this permission, but his rights are subject to the same limitations that have been already pointed out. He must impose no new servitude upon the land. If he does he takes not only what the municipality had to grant but he takes from the owner in addition." A good deal of reliance is placed by the appellant on the statement, also contained in the opinion of Mr. Justice WILLIAMS, that the overhead structure complained of in that case would remain even after the street had been vacated. But it is to be observed in that case the landowner was seeking damages because of the imposition of an addi-

242   C. D. & P. T. CO., Appellant, *v.* P., McK. & Y. R. R. CO.

Opinion of the Court.       [55 Pa. Superior Ct.

tional servitude on his property; and it is further to be noted that a railroad company, in the construction of its line, is not confined by law or the terms of its charter to public streets and highways.

We do not think it can be successfully contended that because the borough gave its assent to the construction by the appellant of its pole line, along what was then a public street, the borough had, by implication, lost its right for all time to vacate that street when the public good required such action. In the present case the municipality has acted. The destruction of the public easement theretofore existing was within the recognized boundaries of municipal action. When, as a necessary result of that action, the landowner was immediately restored to the full possession of his property, he became revested with every right ordinarily incident to its ownership. The plaintiff never took anything from that owner. It never paid anything to him for the loss of any of his property rights. It never undertook to use its power of eminent domain for that purpose. To what extent, if at all, it could successfully use such power, we need not here consider. The defendant railroad companies are also public service corporations, and it may be, for aught disclosed by this record, this property is necessary for the corporate uses of these companies.

When companies like the appellant seek municipal assent to enter, with their works, on the streets of a borough or city, they are affected with knowledge of the limitations within which the borough must act. We are of opinion that the plaintiff has presented no case which would warrant a chancellor in granting the injunctive decree prayed for. The learned judge below was therefore right in refusing it. The assignments of error are overruled and the decree dismissing the appellant's bill affirmed.

Decree affirmed.